IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEVIN D. BOOKER, and RYAN T. BOOKER, and BRIGHTON A. STYLES, | CIVIL ACTION NO.: _____ |
| Plaintiffs, | JURY TRIAL DEMANDED |
| -against- | |
| MIDOSA USA LTD., | |
| Defendant. | |

## COMPLAINT-CIVIL ACTION

KEVIN D. BOOKER, and RYAN T. BOOKER, and BRIGHTON A. STYLES (together, where appropriate, as "Plaintiffs"), by and through their attorneys, BORRELLI & ASSOCIATES, P.L.L.C., sponsored by MONTGOMERY MCCRACKEN WALKER & RHOADS LLP, as and for their Complaint against MIDOSA USA LTD ("Defendant"), allege upon knowledge as to themselves and their own actions and upon information and belief as to all other matters as follows:

## NATURE OF CASE

1. This is a civil action based upon Defendant's willful violations of Plaintiffs' rights guaranteed to them by: (i) the anti-race discrimination provisions of Section 1981 of Title 42 of the United States Code ("Section 1981"); (ii) the anti-

retaliation provisions of Section 1981; and (iii) any other claim(s) that can be inferred from the facts set forth herein.

2.      Plaintiffs, all African American, are former employees of Defendant, a company that provides waste removal and other services to Northeastern Pennsylvania, for whom they worked at Defendant's facility located in Columbia Cross Roads, Pennsylvania.  As described below, Defendant, through the actions of its predominantly Caucasian and entirely non-African American employees, subjected Plaintiffs to disparate treatment and an egregious hostile work environment on the basis of their race, including by, *inter alia*, enforcing workplace rules more stringently against Plaintiffs than against their Caucasian counterparts, failing to assign Plaintiffs, all hourly employees, similar work hours as their Caucasian co-workers, and refusing to work with "the Black folk."  When Plaintiffs lodged good-faith complaints about the discrimination that they faced, Defendant not only failed to take action to cure it, but to the contrary, permitted the severity and pervasiveness of the hostile work environment to increase, which included Caucasian employees making despicable and racist statements to them such as: "look at those lazy niggers."  Defendant then retaliated by subjecting Plaintiffs to various forms of hostility and disparate treatment, and ultimately by terminating all Plaintiffs' employment on the same day, in flagrant violation of Section 1981.

## JURISDICTION AND VENUE

3. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, as this action arises under 42 U.S.C. § 1981.

4. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims for relief occurred within this judicial district.

## PARTIES

5. At all relevant times herein, Plaintiffs are residents of the State of New York who worked for Defendant in the Commonwealth Pennsylvania and who are each considered a "person" within the meaning of Section 1981.

6. At all relevant times herein, Defendant is a corporation organized and existing under the laws of Pennsylvania, with its principal place of business located at 11 Trustee Road, Columbia Cross Roads, Pennsylvania 16914, and that is a "person" within the meaning of Section 1981.

## BACKGROUND FACTS

**A. From the Outset, Defendant Subjected Plaintiffs to Disparate Treatment and a Hostile Work Environment Based on Race and Failed to Remedy the Violations despite Plaintiffs' Complaints.**

7. Defendant is a Pennsylvania-based company that provides waste removal and frac fluid heating services to its customers that are mostly located in Northeastern Pennsylvania.

8. Plaintiffs all began their employment with Defendant as waste removal laborers on August 9, 2018, working out of Defendant's facility located at 3238 Springfield Drive, Columbia Cross Roads, Pennsylvania ("the Shop").

9. At all relevant times, Rick Watt was Defendant's President.

10. At all relevant times, Shawn Sandor was a Work-Site Supervisor and a driver who oversaw the work of all waste removal laborers, including Plaintiffs.

11. At all relevant times, Rodney Morgan was a dispatcher responsible for the scheduling of Defendant's waste removal laborers.

12. At all relevant times, Annette Sharrow was Defendant's Human Resources Manager/Generalist.

13. When Plaintiffs started working for Defendant, there was only one other African American waste removal laborer employed by Defendant.

14. Defendant treated Plaintiffs disparately as compared to the other waste removal laborers even before Plaintiffs' first day of work. Indeed, after accepting their employment offer, but before starting work, Annette Sharrow directed Plaintiffs to shave their faces, as they all had facial hair. Plaintiffs reluctantly complied, only to discover, upon reporting to work on their first day, that the majority of their Caucasian co-workers had long ungroomed beards.

15. The disparate treatment intensified on their first day of work. Specifically, on Plaintiffs' very first shift, their Caucasian co-workers refused to drive Plaintiffs to their designated work sites, openly stating that they would not ride with "the Black folk." As a result, beginning on this day and continuing thereafter, Plaintiff Styles was frequently forced to drive a Shop-owned vehicle, with the approval of dispatchers Rodney Morgan and Jason (last name unknown), for Plaintiffs to get to the day's worksite as none of their coworkers would drive Plaintiffs there. Plaintiffs' supervisors were aware that Plaintiff Styles drove a Shop-owned vehicle because a supervisor had to give him the keys each time.

16. At the same time, Caucasian laborers made other despicable and racist statements to Plaintiffs, such as: "I bet your old ladies don't talk back once you put that prison slap on them"; and "You guys probably have big black cocks, don't ya? Let me see." Shawn Sandor endorsed and exacerbated this conduct by also referring to Plaintiffs as the "three gangsters."

17. Moreover, Defendant also treated Plaintiffs and the Caucasian laborers who worked at the Shop, all of whom were paid hourly, differently with respect to their ability to earn money. Specifically, when they were hired, Annette Sharrow told Plaintiffs that they would work at least forty hours each week. However, during their first two weeks at the Shop, Plaintiffs received only twenty-seven and one-half hours each. In contrast, Caucasian laborers received forty hours plus overtime each

week.  Plaintiffs noticed this and requested to Randy Morgan and Jason that they be given the same hours as their Caucasian colleagues.

18.     On August 27, 2018, unable to ignore the hostile work environment and disparate treatment any longer, Plaintiffs complained to Annette Sharrow about all the incidents of harassment and discrimination that they had been subjected to, including those described in the prior paragraphs.  Sharrow responded that she would "take care of it," and instructed Plaintiffs to inform her if more issues arose.  Additionally, following up on a prior conversation, Sharrow told Plaintiffs that they were authorized to drive the Shop vehicles as Rodney Morgan and Jason (last name unknown) had approved and as they had been doing.

**B.    Following Plaintiffs' Complaints, the Disparate Treatment and Hostile Work Environment at the Shop Became Even More Severe.**

19.     On the very next day after they complained, August 28, 2018, Robert (last name unknown), a truck operator and worksite supervisor, and his laborer, Jacob (last name unknown), taunted Plaintiffs with racial slurs, including: "look at those lazy niggers."

20.     Unsurprisingly, on August 31, 2018, during an overnight shift starting at 11:00 p.m., Ostrander finally agreed to drive Plaintiffs to a worksite in one of Defendant's vehicles.  However, while doing so, Ostrander began to smoke an unknown substance from a glass pipe, thereby putting Plaintiffs' lives in danger.

21. Thereafter, on the same shift, Brad Ostrander and Ray (last name unknown), both Caucasian truck drivers and laborers, caused a massive oil spill while attempting to empty one of Defendant's hydrovac truck's tank while under the influence of narcotics. Although Plaintiff Styles, who was assisting them at the time, was able to maintain his grip on the hose, and therefore limit potential injury to himself and the other workers, or damage to the truck, at least ten gallons of oil ended up spilling. Yet Defendant reprimanded neither Ostrander nor Ray, and instead continued to assign them more shifts than they provided to Plaintiffs.

22. On September 3, 2018, Plaintiffs complained to Sharrow about the August 31, 2018 incident, and further reiterated their complaints of the prior instances of the disparate treatment and hostile work environment to which they had been subjected as explained above.

### C. Defendant Terminated Plaintiffs' Employment for Complaining about the Disparate Treatment and Hostile Work Environment at the Shop.

23. Just one week later, on September 10, 2018, Plaintiff Styles was, once again, forced to drive all Plaintiffs to a worksite because the Caucasian laborers from the Shop would not drive them there. The shift supervisor gave Styles the keys to the vehicle. While driving there, Styles, who was not told the location of the worksite prior to departing the Shop, lost sight of the vehicle that he was following and subsequently had to return to the Shop.

24. Upon returning to the Shop, Sharrow informed Plaintiffs that they were all being terminated for driving Defendant's vehicles, even though only Styles had previously driven one of Defendant's vehicles, even though Sharrow had previously confirmed, more than once, that Styles was permitted to drive such vehicles as he was the only Plaintiff with a valid driver's license, and even though the shift supervisor had given Styles the keys to the vehicle that morning. Sharrow then directed Plaintiffs to sign paperwork terminating their employment. Plaintiffs refused.

25. Two days after their termination, on September 12, 2018, Plaintiff Kevin Booker called Rick Watt to inquire if Watt was aware of their complaints of racial discrimination, and more generally of the culture, harassment, and retaliation at the Shop. In response, Watt told Kevin Booker to "stop blowing smoke up [his] ass" and hung up the phone.

**FIRST CLAIM FOR RELIEF AGAINST DEFENDANT**
*Race Discrimination in Violation of 42 U.S.C. § 1981*

26. Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

27. Section 1981 forbids any employer or agent thereof from discriminating against an employee on account of that employee's race.

28. As described above, Defendant discriminated against Plaintiffs on the basis of their race, in violation of Section 1981, by denying them the same terms and conditions of employment available to other employees of a different race, and by denying them the opportunity to work in an employment setting free of unlawful discrimination.

29. As also described above, Defendant discriminated against Plaintiffs on the basis of their race, in violation of Section 1981, by fostering, condoning, accepting, ratifying and/or otherwise failing to prevent a hostile work environment that included, among other things, severe or pervasive racial discrimination against Plaintiffs by their supervisors and coworkers.

30. As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of Section 1981, Plaintiffs have suffered and continue to suffer compensatory damages, including, but not limited to, mental anguish and emotional distress, loss of self-esteem and self-confidence, and emotional pain and suffering, for which they are entitled to an award of monetary damages and other relief, as well as economic harm.

31. Defendant's unlawful discriminatory actions constitute malicious, willful, and wanton violations of Section 1981, for which Plaintiffs are entitled to an award of punitive damages.

## SECOND CLAIM FOR RELIEF AGAINST DEFENDANT
*Retaliation Under 42 U.S.C. § 1981*

32. Plaintiffs repeat, reiterate, and re-allege each and every allegation set forth above with the same force and effect as if more fully set forth herein.

33. As described above, Plaintiffs engaged in activity protected by Section 1981 by lodging good faith complaints about the discrimination to which Defendant subjected them.

34. As also described above, in retaliation for their protected activity, Defendant took the above-described actions against them, including the termination of their employment, and fostered an increasingly pervasive or severe hostile work environment.

35. As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of Section 1981, Plaintiffs have suffered and continue to suffer monetary and/or non-economic damages, including, but not limited to, loss of past and future income, compensation and benefits, mental anguish and emotional distress, loss of self-esteem and self-confidence, and emotional pain and suffering, for which they are entitled to an award of monetary damages and other relief.

36. Defendant's unlawful retaliatory actions constitute malicious, willful, and wanton violations of Section 1981, for which Plaintiffs are entitled to an award of punitive damages.

## **DEMAND FOR A JURY TRIAL**

37. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury on all claims in this action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

A. Declare that the actions, conduct, and practices of Defendant complained of herein violate the laws of the United States and the State of Pennsylvania;

B. Grant preliminary and permanent injunctions against Defendant and its officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

C. Enter an order restraining Defendant from any retaliation against Plaintiffs for participation in any form in this litigation;

D. Grant an award of damages in an amount to be determined at trial to compensate Plaintiffs for all monetary and/or economic damages in connection with their claims, whether legal or equitable in nature, including back pay, front pay, and any other damages for lost compensation or employee benefits that they would have received but for the Defendant's unlawful conduct;

E. Grant an award of damages to be determined at trial to compensate Plaintiffs for harm to their professional and personal reputations and loss of career fulfillment in connection with their claims;

F. Grant an award of damages to be determined at trial to compensate Plaintiffs for emotional distress and/or mental anguish in connection with their claims;

G. Grant an award of punitive damages, as provided by law, commensurate with the Defendant's ability to pay;

H. Award Plaintiffs their reasonable attorneys' fees, costs, and disbursements incurred in this action, including, but not limited to, any experts witness fees;

I. Award pre-judgment and post-judgment interest, as provided by law; and

J. Grant such other and further relief, including equitable relief, as the Court may deem just and proper.

Dated: Philadelphia, Pennsylvania
February 14, 2020

Respectfully submitted,

MONTGOMERY MCCRACKEN
WALKER & RHOADS LLP

By:     /s/John G. Papianou
JOHN G. PAPIANOU (PA 88149)
1735 Market Street, 21st Floor
Philadelphia, PA 19103-7599
Tel. (215) 772-7291
Fax (215) 731-3636
E-mail: jpapianou@mmwr.com

BORRELLI & ASSOCIATES, P.L.L.C.

By: [signature]
SHANI J. WALKER (NY 5572045)
(*pro hac vice motion forthcoming*)
ALEXANDER T. COLEMAN (NY 4767299)
(*pro hac vice motion forthcoming*)
MICHAEL J. BORRELLI (NY 4031381)
(*pro hac vice motion forthcoming*)
910 Franklin Avenue, Suite 200
Garden City, New York 11530
Tel. (516) 248-5550
Fax (516) 248-6027
*Attorneys for Plaintiffs*

E-mail: sjw@employmentlawyernewyork.com
E-mail: atc@employmentlawyernewyork.com
E-mail: mjb@employmentlawyernewyork.com