**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KEVIN D. BOOKER, and RYAN T. BOOKER, and BRIGHTON A. STYLES, | : : : **CIVIL ACTION NO.: 20-cv-00274-** : **MWB** : |
| Plaintiffs, | : |
| -against- | : : |
| MIDOSA USA LTD., | : : |
| Defendant. | : |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO**
**DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Danielle E. Mietus, Esq.
Alexander T. Coleman, Esq.
Michael J. Borrelli, Esq.
BORRELLI & ASSOCIATES, P.L.L.C
*Attorneys for Plaintiffs*
910 Franklin Avenue, Suite 200
Garden City, New York 11530
(516) 248-5550
(516) 248-6027

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................ *ii*

**PRELIMINARY STATEMENT** ...........................................................1

**SUMMARY OF MATERIAL FACTS** ................................................3

**COUNTER-STATEMENT OF QUESTIONS PRESENTED** ............................8

**SUMMARY JUDGEMENT STANDARD** ............................................9

**ARGUMENT** ...................................................................................10

    I.  THERE IS PLAINLY A QUESTION OF FACT AS TO WHETHER PLAINTIFFS' REJECTION OF DEFENDANT'S OFFERS OF REINSTATEMENT WAS REASONABLE ...........................................10

    II.  PLAINTIFFS HAVE ADDUCED EVIDENCE FROM WHICH A REASONABLE FACTFINDER COULD AWARD THEM FRONT PAY FOR THEIR LOST WAGES ................................................................16

**CONCLUSION** ................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                    **Page(s)**

*Abuan v. Level 3 Communications, Inc.*,
   353 F.3d 1158 (10th Cir. 2003)...................................................................14

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ................................................................................9,10

*Anderson v. Phoenix Beverages, Inc.*,
   2017 WL 9481014 (E.D.N.Y. July 17, 2017).......................................14

*Benedith v. Malverne Union Free School Dist.*,
   38 F. Supp. 3d 286 (E.D.N.Y. 2014) ......................................................14

*Claiborne v. Illinois Central Railroad*,
   583 F.2d 143 (5th Cir. 1978).....................................................................11

*Davis v. Supermarkets General Corp.*,
   584 F. Supp. 870 (E.D. Pa. 1984) ..........................................................17

*Donlin v. Philips Lighting North America Corp.*,
   581 F.3d 73 (3d Cir. 2009)............................................................... 17, 18

*Fiedler v. Indianhead Truck Line Inc.*,
   670 F.2d 806 (8th Cir. 1982).....................................................................11

*Ford Motor Company v. EEOC*,
   458 U.S. 219 (1982) ........................................................... 10, 11, 12

*Goss v. Exxon Office Systems Co.*,
   747 F.2d 885 (1984)....................................................................................18

*Green v. USX Corp.*,
   843 F.2d 1511 (3d Cir. 1988)....................................................................17

*Hrobowski v. Worthington Steel Co.*,
   358 F.3d 473 (7th Cir. 2004).....................................................................15

*Maturo v. National Graphics, Inc.*,
   722 F. Supp. 916 (D. Conn. 1989) .................................................. 12, 13

*McKay v. Principi*,
   2004 WL 2480455 (S.D.N.Y. Nov. 4, 2004) ................................. 14, 15

*Morris v. American Nat. Can Cor.*,
   952 F.2d 200 (8th Cir. 1991) ...........................................................11

*Naylor v. Georgia-Pacific Corp.*,
   875 F. Supp. 564 (N.D. Ia. 1995) ....................................................12

*Pollard v. E.I. du Pont de Nemours & Co.*,
   532 U.S. 843 (2001) .........................................................................17

*Rivera v. Rochester Genesee Reg'l Transp. Auth.*,
   743 F.3d 11 (2d Cir. 2014) ...............................................................15

*Roberts v. Air Capitol Plating, Inc.*,
   1996 WL 499122 (D. Kan. Aug. 21, 1996) .......................................14

*Rodgers v. W-S Life Ins. Co.*,
   12 F.3d 668 (7th Cir. 1993) ..............................................................15

*Sam Mannino Enterprises, Inc. v. CIT Railcar Funding Company, LLC*,
   2021 WL 2376662 (M.D.Pa. June 10, 2021) ..................................... 10

*Shannon v. Fireman's Fund Ins. Co.*,
   136 F. Supp. 2d 225 (S.D.N.Y. 2001) ...............................................18

*Smith v. World Inc. Co*,
   38 F.3d 1456 (8th Cir. 1994) ............................................................11

*Tolan v. Cotton*,
   134 S. Ct. 1861 (2014) .......................................................................9

*White v. BFI Waste Services, LLC*,
   375 F.3d 288 (4th Cir. 2004) ............................................................14

*Whittington v. Nordam Group Inc.*,
    429 F.3d 986 (10th Cir. 2005)...............................................................19

*Whittlesey v. Union Carbide Corp.*,
    742 F.2d 724 (2d Cir. 1984)................................................................18

*Wilcox v. Stratton Lumber, Inc.*,
    921 F. Supp. 837 (D. Me. 1996) ..........................................................14

*Wishkin v. Potter,*
    476 F.3d 180 (3d Cir. 2007)...................................................................9

**Statutes**                                                              **Page(s)**

42 U.S.C. § 1981 ...................................................................... *passim*

**Rules**                                                                      **Page(s)**

Fed. Rule Civ. Pro. 52(a) ..........................................................12

Fed. Rule Civ. Pro. 56(a) ...........................................................9

**PRELIMINARY STATEMENT**

In this employment discrimination and retaliation case arising under Section 1981 of Title 42 of the United States Code ("Section 1981"), Plaintiffs Kevin D. Booker, Ryan T. Booker, and Brighton A. Styles submit this memorandum of law in opposition to Defendant Midosa USA Ltd. ("Defendant" or "Midosa")'s motion for partial summary judgment. Plaintiffs, all African Americans who worked for Defendant - - a company that provides waste removal services that is located in Columbia Cross Roads, Pennsylvania - - as waste removal laborers, seek redress for the disparate treatment and egregious hostile work environment to which Defendant subjected them due to their race. This included Defendant permitting Plaintiffs' supervisors and other employees to refer to Plaintiffs as "lazy niggers," as well as other repugnant racial terms. Plaintiffs also claim that Defendant retaliated against them for complaining about that discrimination by, ultimately, terminating all of their employment on the same day. As is relevant to Defendant's motion, Plaintiffs seek economic damages, in the form of front pay and back pay, resulting from their terminations.

Defendant's motion does not at all address Defendant's liability, but rather seeks only, as a matter of law, to preclude Plaintiffs from recovering an award of front pay and back pay due to Plaintiffs' rejection of Defendant's offers to reinstate them to their jobs after firing them, as well as Plaintiffs' supposed failure to offer

"substantial evidence" of these damages.  Specifically, first, Defendant argues that Plaintiffs' refusal of Defendant's offers of reinstatement four days after Defendant fired them conclusively, as a matter of law, on its own, means that Plaintiffs cannot recover economic damages for lost pay from that point going forward.  This ignores copious caselaw to the contrary.  Indeed, while it is generally true that a fired employee's rejection of an unconditional offer of reinstatement cuts of that employee's entitlement to these damages, that is not so when special circumstances exist such that the employee's refusal of the offer was reasonable, and therefore justified.  And while there is little-to-no caselaw on this precise issue from within the Third Circuit, courts around the country have found such circumstances to exist when, *inter alia*, accepting the reinstatement offer would require the employee to resume working in close proximity with those who perpetrated the discriminatory conduct without reasonable assurances from the employer that the employee would be protected from future discrimination.  There is, at minimum, a question of fact on if this would have been the case here.

Second, Defendant argues that Plaintiffs' claims for front pay are based purely on conjecture because, Defendant says, Plaintiffs have failed to present "substantial evidence" in support of these damages, thus entitling it to summary judgment. *See* Def. Br. at 2, 10-11.  Defendant misstates the law and ignores the facts.  That is, the Third Circuit permits an employment discrimination-plaintiff to recover these

damages based upon his/her own testimony as a lay witness, and Plaintiffs have testified at their depositions, and have also provided interrogatory responses and produced documents, evidencing their lost wages, subsequent employment, and job search history.  In any event, this issue is not ripe for determination at this time, as the decision to award front pay, an equitable remedy, is not made until after trial.

Accordingly, and for the reasons detailed herein, the Court should deny Defendant's motion in its entirety.

## SUMMARY OF MATERIAL FACTS[1]

Plaintiffs - - all African American - - worked for Defendant as waste removal laborers from August 9, 2018, until the termination of all three of their employment on September 10, 2018. Pl. 56.1, ¶¶ 1, 2, 11; Def. 56.1, ¶ 1.  Defendant is a company that provides waste removal and other services located in Columbia Cross Roads, Pennsylvania. Pl. 56.1, ¶ 1; Def. 56.1, ¶ 1.  Midosa's principal place of business

---

[1] All references within this section are made to Defendant's Local Rule 56.1 Statement of Material Facts ("Def. 56.1") (ECF No. 45-2), and Plaintiffs' Local Rule 56.1 Counter-Statement of Material Facts in Opposition to Defendant's Motion for Partial Summary Judgment ("Pl. 56.1"), the latter of which is filed contemporaneously herewith.  The Deposition Transcripts referenced in Def. 56.1 and Pl. 56.1 are included as Exhibits 1-4 to the Appendix to Brief in Support of Defendant Midosa USA, Ltd.'s Motion for Partial Summary Judgment. ECF No. 45-1.  Additional exhibits referenced in Pl. 56.1 are attached as Exhibits A-D to the accompanying Declaration of Danielle E. Mietus, Esq., in Opposition to Defendant's Motion for Partial Summary Judgment, filed contemporaneously herewith.  All facts within this section are taken from the record as cited in the corresponding paragraphs of the 56.1 statements.

includes the office on one side of the property and the Shop on a separate side of the property. Pl. 56.1, ¶ 13.  The Shop is outfitted with lockers, a toilet, a break room, and a punch clock that all employees are required to use. *Id*.  In order to provide these services to its clients, Defendant's business operates twenty-four hours a day, seven days per week, with Midosa's dispatchers scheduling shifts for its employees, depending on factors such as the size of a specific job, the timing of the job, the proximity of workers, and when Defendant's clients need the job to be completed. Pl. 56.1, ¶¶ 12, 14.  To that end, during Plaintiffs' employment, there would be between approximately five and twenty employees at the Shop at a time, and each job site that Plaintiffs worked on had between approximately five and twelve employees there at a time. Pl. 56.1, ¶ 17.  Accordingly, based on scheduling factors, there could be any number of particular employees scheduled to work the same shifts, where they would all, first, congregate in the Shop, and then proceed to the designated job site.  All of Plaintiffs' supervisors throughout their employment at Midosa were Caucasian. Pl. 56.1, ¶ 16.  Similarly - - as Defendant only employed three African American individuals besides Plaintiffs - - the overwhelming majority of Defendant's non-supervisory employees were also Caucasian or of a non-minority race. *Id*.

Prior to Plaintiffs even beginning their first day of work, Defendant began subjecting them to discriminatory treatment based on their race.  More specifically,

Midosa disparately enforced its policies by requiring Plaintiffs to shave their facial hair, but during their first day of work, Plaintiffs observed that Defendant's Caucasian employees did not have their facial hair shaven. Pl. 56.1, ¶ 18.  This was only a sign of things to come.  That is, almost immediately upon Plaintiffs' arriving for their first day of work, Defendant's Caucasian employees, while standing in a group laughing at Plaintiffs, began an onslaught of egregious racial harassment, openly stating that they would not ride with the "black folk," expressly referring to Plaintiffs as "three gangsters," and continuing to taunt Plaintiffs with racial statements, such as "I bet you your old ladies don't talk back once you put that prison slap on them," and "you guys probably have big black cocks, don't ya?  Let me see." Pl. 56.1, ¶¶ 19-22.  Worse, some of the individuals that made these statements were Plaintiffs' supervisors, such as Rodney Morgan and Shawn Sandor, who were also present when Plaintiffs' non-supervisory coworkers made similar comments, yet instead of taking appropriate remedial action, they merely laughed. Pl. 56.1, ¶¶ 21, 23.

This racial discrimination escalated from there.  Specifically, on one occasion while Plaintiffs were performing their work down in a sandpit, a group of Caucasian employees, including Supervisor Shawn Sandor, as well as Robert [Last Name Unknown] and Jacob [Last Name Unknown], stood over Plaintiffs and remarked: "look at those lazy niggers." Pl. 56.1, ¶ 23.  These despicable racist remarks - -

including referring to Plaintiffs as "niggers" - - were made numerous times during Plaintiffs' employment. *Id.*

Further, Defendant did not permit Plaintiffs, who were hourly employees, to work the same number of hours per week as their Caucasian coworkers, who would frequently brag about working eighty hours per week, whereas Plaintiffs typically worked between twenty and forty hours per week. Pl. 56.1, ¶ 24.

Plaintiffs lodged verbal complaints with Annette Sharrow, Defendant's Human Resources Manager/Generalist, on two occasions, about the abhorrent racial discrimination and harassment to which they were being subjected, first in approximately late-August 2018, and then again on or around September 2, 2018. Pl. 56.1, ¶ 25.  After receiving each complaint, Annette Sharrow told Plaintiffs that she would "take care of it," yet Defendant did not took any action at all to do so, and instead permitted its supervisors and lower-level employees to continue engaging in this egregious conduct. *Id.*

Ultimately, shortly after Plaintiffs' second complaints, Defendant terminated all three of their employment on September 10, 2018. Pl. 56.1, ¶ 2; Def. 56.1, ¶ 2. Midosa was well aware of Plaintiffs' complaints of racial discrimination in the workplace. Pl. 56.1, ¶¶ 6, 26, 27; Def. 56.1, ¶ 3.  To that end, Rick Watt, on behalf of Defendant, claimed to have investigated Plaintiffs' allegations of racial discrimination by speaking to the employees that the Plaintiffs named, all of whom

denied that any discrimination had occurred. Pl. 56.1, ¶ 28.  Thus, based on this alleged investigation, on September 14, 2018, Rick Watt, again on behalf of Defendant, denied to Plaintiffs that any racial discrimination and/or retaliation had occurred during Plaintiffs' employment because of Defendant's employees' denials. Pl. 56.1, ¶¶ 6, 28, 29; Def. 56.1, ¶ 3.  Moreover, Defendant did not create any documents evidencing what was discussed during Plaintiffs' post-termination meeting, including Plaintiffs' complaints of race discrimination in the workplace, and Rick Watt only addressed Plaintiffs' allegations of racial discrimination in front of all of Defendant's employees on one occasion during a safety meeting after Plaintiffs' termination. Pl. 56.1, ¶¶ 27, 30.

Despite outright denying that Plaintiffs were ever subjected to any racially discriminatory and retaliatory conduct, on September 14, 2018, Rick Watt offered all Plaintiffs their jobs back. Pl. 56.1, ¶ 7; Def. 56.1, ¶ 7.  However, Plaintiffs rejected Defendant's offers because they had been egregiously discriminated against due to their race by Defendant's supervisors and other employees, because Defendant denied that any race discrimination or retaliation had ever occurred in the workplace, and because Defendant did not make any assurance that it would protect Plaintiffs from being subjected to further race discrimination and retaliation in the workplace if they accepted the offers of reinstatement. Pl. 56.1, ¶¶ 8-10, 31.

Thereafter, Plaintiffs each took active steps to obtain replacement employment, but in the rural area where Plaintiffs reside, steady work is scarce. Pl. 56.1, ¶¶ 32, 33.  Indeed, Plaintiffs desperately endeavored to obtain any employment they could find at the same $15.00 hourly rate that Defendant had paid them, including working various odd jobs and obtaining intermittent steady employment at various compensation rates. Pl. 56.1, ¶¶ 15, 33-44.

## COUNTER-STATEMENT OF QUESTIONS PRESENTED

I.   Is there a genuine issue of material fact regarding whether Plaintiffs reasonably rejected Defendant's offers of reinstatement that it made four days after the termination of Plaintiffs' employment, where Plaintiffs' evidence demonstrates that Defendant: permitted its supervisors and other employees to egregiously harass Plaintiffs by, *inter alia*, referring to them as "lazy niggers," "black folk," "three gangsters," and opining that "I bet you your old ladies don't talk back once you put that prison slap on them," and "you guys probably have big black cocks, don't ya?  Let me see"; outright denied that Plaintiffs were ever subjected to any racially discriminatory and retaliatory conduct; failed to provide Plaintiffs with any assurances that they would not be subjected to further discrimination and/or retaliation if they accepted Defendant's reinstatement offer; and to the contrary, doing so would have required Plaintiffs to return to work

under the exact same working conditions, and in close proximity to the same supervisors and employees who were discriminating against Plaintiffs based on their race in the first place?

Answer: Yes, there is plainly a question of fact on this issue.

II.     Have Plaintiffs adduced evidence from which a reasonable factfinder could award them front pay for their lost wages?

Answer: Yes, and in any event, this issue is not ripe for determination until after trial.

## SUMMARY JUDGMENT STANDARD

Summary judgment only "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (citing Fed. Rule Civ. Pro. 56(a)).   In reviewing a motion for summary judgment, a court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant. *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014); *see also Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007) (same). Summary judgment "will not lie if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Anderson*, 477 U.S. at 248; *see also Sam Mannino Enterprises, Inc. v. CIT Railcar Funding Company, LLC*, 2021 WL 2376662, at *4 (M.D.Pa. June 10, 2021) (Brann, *J*.) (noting that "at the summary judgement stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial") (citation and internal punctuation omitted).

## ARGUMENT

I.   **THERE IS PLAINLY A QUESTION OF FACT AS TO WHETHER PLAINTIFFS' REJECTION OF DEFENDANT'S OFFERS OF REINSTATEMENT WAS REASONABLE.**

Starting with the general rule, the Supreme Court held in *Ford Motor Company v. EEOC*, 458 U.S. 219, 241 (1982) ("*Ford*"), that "absent special circumstances, the rejection of an employer's unconditional job offer ends the accrual of potential backpay liability."   As to what constitutes those special circumstances, as Defendant notes, neither the Third Circuit nor courts within it have drilled into this issue. *See* Def. Br. at 8.  However, other Circuit and district courts around the country have found special circumstances to exist under *Ford* when an employee's refusal of such an offer was reasonable, and therefore justified.  Indeed, as Defendant acknowledges, the "refusal of [an offer of] reinstatement does not necessarily preclude the award of front pay if a plaintiff has reasonably refused the

offer." *See* Def. Br. at 7 (citing *Smith v. World Inc. Co.*, 38 F.3d 1456, 1464 (8th Cir. 1994)).

In addressing whether an employee's refusal of an offer was reasonable, courts have held that "refusal of a reinstatement offer is measured by an objective standard: '[g]enerally, it is the duty of the trier of fact to weigh the evidence to determine whether a reasonable person would refuse the offer of reinstatement.'" *Morris v. American Nat. Can Cor.*, 952 F.2d 200, 203 (8th Cir. 1991) (quoting *Fiedler v. Indianhead Truck Line Inc.*, 670 F.2d 806, 808 (8th Cir. 1982)). While the determination as to what factors justify a reasonable refusal is within the sound discretion of the court, *see Ford*, 458 U.S. at 238, n. 27, courts measure the reasonableness of a plaintiff's decision based upon the totality of the circumstances and the facts that were known to the plaintiff at the time the decision was made. *See Smith*, 38 F.3d at 1464 (finding that "[w]hile many of the individual factors standing alone would not be sufficient to establish an objectively reasonable rejection of the offer, the totality of the circumstances would have allowed the jury to reach that conclusion"); *Claiborne v. Illinois Central Railroad*, 583 F.2d 143, 153 (5th Cir. 1978) (noting that the court considers "the circumstances under which the offer was made or rejected, including the terms of the offer and the reasons for refusal").

Several district courts have found special circumstances to exist, or at least a question of fact as to whether special circumstances exist, on facts similar to those

here.  For instance, in *Naylor v. Georgia-Pacific Corp.*, 875 F. Supp. 564, 582 (N.D. Ia. 1995), the court denied defendant's motion for summary judgment on this issue, specifically finding that plaintiff established a question of material fact as to whether it was reasonable for him not to accept the offer of reinstatement because of a fear of continued racial harassment were he to return to work at defendant's plant. *Id.*  In this racial discrimination case, plaintiff alleged that he was subjected to racist jokes and comments by his coworkers and found a racist cartoon in the workplace, all of which he reported to his supervisors and the plant manager. *Id.* at 571.  Following plaintiff's termination, defendant made an offer of reinstatement, which plaintiff rejected. *Id.*  In denying defendant's summary judgment motion to toll back pay based on that rejection, the court specifically found that a "reasonable concern of continued harassment may constitute an exception under *Ford Motor*." *Id.* at 582.

Similarly, in *Maturo v. National Graphics, Inc.*, 722 F. Supp. 916, 927 (D. Conn. 1989), following a bench trial, in its findings of fact and conclusions of law pursuant to Fed. Rule Civ. Pro. 52(a), the court found special circumstances existed, and that plaintiff's rejection of defendants' offer of reinstatement was therefore reasonable, given "the extraordinary level of harassment and hostility . . . and the complete inaction of management," further concluding that "[n]o person could work under such circumstances with any peace of mind."  In *Maturo*, the plaintiff alleged that her supervisor sexually harassed her by repeatedly making graphic sexual

remarks, such as stating his desire to have oral and anal sex with plaintiff, which only became "increasingly vulgar and aggressive in nature." *Id*. at 920. Because defendants had no formal complaint or grievance procedure, plaintiff lodged verbal complaints to the plant manager and chief executive officer about the sexual harassment she was being subjected to, but they took action so ineffective that the harassment intensified, and indeed, escalated to plaintiff's supervisor fondling her breasts. *Id*. After plaintiff again complained and the supervisor verbally denied that anything happened, management took no further action. *Id*. After the harassment resulted in the constructive discharge of plaintiff's employment, *id*. at 921-922, defendants made an offer of reinstatement, which plaintiff rejected. *Id*. at 927.

Crucially, in holding that plaintiff's rejection of the reinstatement offer was reasonable, the court found that "to require [plaintiff] to accept reinstatement would be not only inequitable but cruel," particularly considering the relatively small workforce that would "undoubtedly [cause plaintiff to] come in contact [with her harasser] on a recurring basis if she returned." *Id*. The *Maturo* court further cited the "utter lack of concern about the harassment" that management displayed and how the reinstatement offer would have had plaintiff "working in relatively close proximity to her [harasser] without any reasonable assurance that she could trust management to protect her from further abuse or assaults." *Id*.

Numerous other courts have reached the same conclusion. *See, e.g., Abuan v. Level 3 Communications, Inc*. 353 F.3d 1158, 1178 (10th Cir. 2003) (upholding the district court's determination that plaintiff reasonably rejected defendant's offer of reinstatement and its award of front pay on a post-trial motion, and noting that "an unconditional and comparable job offer does not prevent the award of front pay in lieu of reinstatement when hostility renders reinstatement inappropriate"); *Roberts v. Air Capitol Plating, Inc*., 1996 WL 499122, at *5 (D. Kan. Aug. 21, 1996) (denying defendant's motion for partial summary judgement and finding that plaintiff raised a question of material fact as to whether her refusal of the offer of reinstatement was reasonable in light of the likelihood of continued discrimination if she accepted the offer); *Wilcox v. Stratton Lumber, Inc*., 921 F. Supp. 837, 843 (D. Me. 1996) (holding, after trial, that plaintiff reasonably declined defendant's offer of reinstatement due to fear of continued harassment).

Here, there is undoubtedly a genuine issue of material fact regarding whether Plaintiffs reasonably rejected Defendant's offers of reinstatement.  First, as several Circuit courts have noted,[2] "'[p]erhaps no single act can more quickly alter the

---

[2] *See also White v. BFI Waste Services, LLC,* 375 F.3d 288, 298 (4th Cir. 2004) (finding that the word "nigger" is pure anathema to African Americans); *Anderson v. Phoenix Beverages, Inc*., 2017 WL 9481014, at *14 (E.D.N.Y. July 17, 2017) (noting that courts have repeatedly concluded that the use of the word "nigger" in the workplace is particularly odious and offensive); *Benedith v. Malverne Union Free School Dist*., 38 F. Supp. 3d 286, 314 (E.D.N.Y. 2014) (same); *McKay v.*

conditions of employment and create an abusive working environment than the use of an unambiguously racial epithet such as "nigger" by a supervisor in the presence of his subordinates.'" *Rivera v. Rochester Genesee Reg'l Transp. Auth*., 743 F.3d 11, 24 (2d Cir. 2014) (quoting *Rodgers v. W-S Life Ins. Co*., 12 F.3d 668, 675 (7th Cir. 1993)); *accord Hrobowski v. Worthington Steel Co*., 358 F.3d 473, 477 (7th Cir. 2004) ("[g]iven American history, we recognize that the word 'nigger' can have a highly disturbing impact on the listener.  Thus, a plaintiff's repeated subjection to hearing that word could lead a reasonable factfinder to conclude that a working environment was objectively hostile").  Plaintiffs have all testified that this occurred here, along with so much more.  Indeed, Plaintiffs have provided ample evidence from which a reasonable factfinder can conclude that Plaintiffs rejected Defendant's offers because they had been egregiously discriminated against due to their race by Defendant's supervisors and other employees, which included Supervisor Shawn Sandor calling them "lazy niggers," because Defendant denied that any such race discrimination or retaliation had ever occurred in the workplace, and because Defendant did not make any assurance that it would protect Plaintiffs from being subjected to further race discrimination and retaliation in the workplace if they accepted the offers of reinstatement. Pl. 56.1, ¶¶ 8-10, 31.  To that end, because

---

*Principi,* 2004 WL 2480455, at *6 (S.D.N.Y. Nov. 4, 2004) (same and collecting cases stressing the harmful effects of the use of the word "nigger" in the workplace).

Defendant's business operates twenty-four hours a day, seven days per week, with Midosa's dispatchers scheduling various employees to work any given shift, Pl. 56.1, ¶¶ 12, 14, had Plaintiffs accepted the offers, they would have been forced to resume working in close proximity with the supervisors and employees who grotesquely discriminated against them due to their race. Pl. 56.1, ¶ 23.  Tellingly, Defendant's moving papers omit references to *any* of this evidence and do not cite any of the cases listed above, which are plainly analogous to this one.

At bottom, there is a genuine issue of material fact as to whether Plaintiffs' rejection of Defendant's offers of reinstatement was in fact reasonable under the totality of the circumstances known to Plaintiffs at the time, and it is for the trier of fact to weigh that evidence and only make a determination once it has done so. Because the Court cannot resolve this issue at this time, the Court must deny this portion of Defendant's motion.

## II.   PLAINTIFFS HAVE ADDUCED EVIDENCE FROM WHICH A REASONABLE FACTFINDER COULD AWARD THEM FRONT PAY FOR THEIR LOST WAGES.

Next, Defendant argues that Plaintiffs' claims for front pay are based purely on conjecture because, Defendant says, Plaintiffs have failed to present "substantial evidence" in support of these damages, thus entitling it to summary judgment. *See* Def. Br. at 2, 10-11.  In doing so, Defendant relies on irrelevant cases that do not address this issue, as Defendant's cases do not involve employment discrimination

claims, nor were they decided at the summary judgment stage.  Defendant's failure to cite to any such cases must be because this issue is only ripe for adjudication *after* a determination of liability has been made.

That is, in employment discrimination cases concerning termination, the Third Circuit has noted that the "jury's role [i]s only advisory on the issue of damages because back pay and front pay are equitable remedies to be determined by the court." *Donlin v. Philips Lighting North America Corp.*, 581 F.3d 73, 78 (3d Cir. 2009) (citing *Pollard v. E.I. du Pont de Nemours & Co.*, 532 U.S. 843, 849-50 (2001)).  Further, the Third Circuit does not refuse to award front pay merely because some prediction is necessary. *Id.* at 87 (citing  *Green v. USX Corp.*,  843 F.2d 1511, 1532 (3d Cir. 1988), *vacated on other grounds*, 490 U.S. 1103, 1103 (1989), *reinstated in relevant part,* 896 F.2d 801, 801 (3d Cir. 1990)).  Indeed, as the court in *Davis v. Supermarkets General Corp.*, 584 F. Supp. 870, 872 (E.D. Pa. 1984), held in an employment discrimination action under Section 1981, "where a plaintiff does not seek reinstatement, plaintiff will be permitted to introduce evidence of future wages lost as a result of defendant's conduct."  The *Davis* court further noted that "[l]ost wages, whether past or future, are legal damages and straightforward computations within the capabilities of juries." *Id*.  As the Third Circuit noted, following a jury's recommendation on an award of front pay, the district court is allowed "to exercise discretion in selecting a cut-off date for an

equitable front pay remedy subject to the limitation that front pay only be awarded 'for a reasonable future period required for the victim to reestablish her rightful place in the job market.'" *Donlin*, 581 F.3d at 87 (quoting *Goss v. Exxon Office Systems Co.*, 747 F.2d 885, 889-90 (1984)).

Moreover, in deciding whether an award of front pay is appropriate, a court should consider: (1) whether reinstatement is either impossible or impracticable; (2) whether the plaintiff has a reasonable prospect of obtaining comparable employment; and (3) whether the calculation of front pay would involve undue speculation. *See Shannon v. Fireman's Fund Ins. Co.*, 136 F. Supp. 2d 225, 233 (S.D.N.Y. 2001) (citing *Whittlesey v. Union Carbide Corp.*, 742 F.2d 724, 729 (2d Cir. 1984)). Furthermore, the *Shannon* court awarded the plaintiff front pay based solely on his testimony regarding his diligent mitigation efforts despite his inability to secure subsequent employment and his wages. *Id.* at 233-234.

Here, as reinstatement is impracticable for the reasons noted above, Plaintiffs have provided ample evidence that all three of them took active steps to obtain replacement employment, but in the rural area where Plaintiffs reside, steady work is scarce. Pl. 56.1, ¶¶ 32, 33. To that end, Plaintiffs have testified at their depositions, and have also provided interrogatory responses and produced documents, evidencing their lost wages, subsequent employment, and job search history. This evidence shows that Plaintiffs desperately endeavored to obtain any employment that they

could find at the same $15.00 hourly rate that Defendant had paid them, including working various odd jobs and obtaining intermittent steady employment at various compensation rates. Pl. 56.1, ¶¶ 15, 33-44.  Moreover, Plaintiffs are certainly capable of testifying as lay witnesses that they worked as hourly laborers for Defendant and did not receive any overly complex benefits such as pensions that would require an individual with specialized knowledge to testify. *See Whittington v. Nordam Group Inc.*, 429 F.3d 986, 1001 (10th Cir. 2005) (upholding the district court's reliance on plaintiff's testimony regarding his wages and work expectancy in awarding front pay).

Accordingly, the Court must deny this portion of Defendant's motion as well.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Defendant's motion for partial summary judgment in its entirety.

Dated: Garden City, New York
     October 29, 2021

Respectfully submitted,

BORRELLI & ASSOCIATES, P.L.L.C.
*Attorneys for Plaintiffs*
910 Franklin Avenue, Suite 200
Garden City, New York 11530
Tel. (516) 248-5550
Fax. (516) 248-6027

By:     _____

DANIELLE E. MIETUS (NY 5478060)
ALEXANDER T. COLEMAN (NY 4767299)
MICHAEL J. BORRELLI (NY 4031381)

**CERTIFICATE OF WORD COUNT PURSUANT TO L.R. 7.8(B)(2) OF THE RULES OF COURT OF THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

The foregoing brief was prepared on a computer.  A proportionally spaced typeface was used, as follows:

Name of Typeface:               Times New Roman

Point Size, Text:               14

Point Size, Footnotes:          14

Line Spacing:                   Double

The total number of words in this brief, inclusive of point headings and footnotes and exclusive of pages containing the table of contents, table of authorities, and this Certificate, is 4,595 words.

By:   _____

DANIELLE E. MIETUS (NY 5478060)